U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED

AUG 16 2016

TONY R. MOORE  CLERK
BY _____ DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| WILLIAM STAMPS, JR. | CIVIL ACTION NO. 1:15-CV-00219 |
| VERSUS | CHIEF JUDGE DRELL |
| U.S.A. | MAGISTRATE JUDGE PEREZ-MONTES |

### REPORT AND RECOMMENDATION

Before the Court is a complaint filed pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671-2680, by pro se plaintiff William Stamps, Jr. ("Stamps") on February 2, 2015 and amended on March 2, 2015 (Doc. 5).[1] The sole defendant is the United States.

Stamps contends that, when he was confined in the United States Penitentiary in Pollock, Louisiana ("USP-Pollock") from 2006 through 2013, he was exposed to "toxic mold." Stamps alleges that environmental testing in September 2011 revealed the existence of toxic mold in areas of the facility used by inmates. Stamps alleges that employees of the United States Bureau of Prisons "allowed faulty roofing and HVAC inadequacies" to exist for years, and those inadequacies provided "the conditions for toxic mold growth" that caused his injuries. Stamps alleges he had allergic reactions to the mold (rashes, hives, facial swelling) from 2006 through 2013,

---

[1] Although Stamps captioned his complaint as pursuant to Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971), it is a complaint pursuant to the FTCA because only the United States was named as a defendant and served (Doc. 10); see also McGuire v. Turnbo, 137 F.3d 321, 324 (5th Cir. 1998).

and suffered permanent allergies, damage to his digestive system, urticaria,[2] angioedema,[3] aggravated keloids, scar tissue, nerve damage caused by daily injections of Benadryl, side effects from prolonged treatment with prednisone, a suppressed immune system, and a reduced life expectancy. Stamps also alleges denial of adequate medical care for his urticaria and angioedema, and denial of medical care for a torn muscle in 2011. For relief, Stamps asks for monetary damages. Stamps is presently incarcerated in USP-Atlanta, Georgia.

The United States answered the complaint (Doc. 13) and filed a motion for summary judgment (Doc. 27). Despite two extensions of time (Docs. 32, 34), Stamps did not respond to the United States's motion. That motion is now before the Court for disposition.

---

[2] Urticaria is also known as hives. An allergic reaction to a drug or food usually causes hives. Allergic reactions cause your body to release chemicals that can make your skin swell up in hives. People who have other allergies are more likely to get hives. Other causes of hives include infections and stress. Hives are very common. They usually go away on their own, but a person with a serious case of hives might need medicine. See MEDLINEplus Health Information, Health Topics: Hives, *available at* https://medlineplus.gov/hives.html (a service of the U.S. National Library of Medicine and the National Institutes of Health).

[3] Angioedema is swelling that is similar to hives, but the swelling is under the skin instead of on the surface. Angioedema may be caused by an allergic reaction. In most cases, the cause of angioedema is never found. Angioedema may be caused by animal dander, exposure to water, sunlight, cold or heat, foods, insect bites, medicines such as antibiotics, nonsteroidal anti-inflammatory drugs, blood pressure medicines, and pollen. Hives and angioedema may also occur after infections or with other illnesses, including autoimmune disorders such as lupus, and leukemia and lymphoma. A form of angioedema runs in families and has different triggers, complications, and treatments. The swelling usually occurs around the eyes and lips. It may also be found on the hands, feet, and throat. The welts are painful and may be itchy. This is known as hives (urticaria). The deeper swelling of angioedema may also be painful. Other symptoms may include abdominal cramping, breathing difficulty, swollen eyes and mouth, and swollen lining of the eyes (chemosis). See MEDLINEplus Health Information, Health Topics: Hives, *available at* https://medlineplus.gov/ency/article/000846.htm (a service of the U.S. National Library of Medicine and the National Institutes of Health).

## Law and Analysis

### Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure mandates that the Court shall grant a summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Paragraph (e) of Rule 56 also provides the following:

> If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials-including the facts considered undisputed-show that the movant is entitled to it; or (4) issue any other appropriate order.

Local Rule 56.2 also provides that all material facts set forth in a statement of undisputed facts submitted by the moving party will be deemed admitted for purposes of a motion for summary judgment unless the opposing party controverts those facts by filing a short and concise statement of material facts as to which that party contends there exists a genuine issue to be tried.

Substantive law determines what facts are "material." A material fact issue exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. However, the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient to preclude summary judgment; there must be evidence on which the jury could reasonably find for the plaintiff. See Stewart v. Murphy, 174 F.3d 530, 533 (5th Cir. 1999).

If the movant produces evidence tending to show that there is no genuine issue of material fact, the nonmovant must then offer evidence sufficient to establish a genuine issue of material fact for trial. In this analysis, the Court reviews the facts and draws all inferences most favorable to the nonmovant. See Herrera v. Millsap, 862 F.2d 1157, 1159 (5th Cir. 1989). However, mere conclusory allegations are not competent summary judgment evidence, and such allegations are insufficient to defeat a motion for summary judgment. See Topalian v. Ehrman, 954 F.2d 1125, 1131 (5th Cir. 1992).

Exposure to Toxic Mold

The United States argues that Stamps failed to carry his burden of proving he was exposed to harmful levels of toxic mold. The United States contends that Stamps is relying on a report from EMSL Analytical, Inc. (Doc. 27-4) which has notations of certain molds as "high" or "medium," but that Stamps has not provided expert analysis interpreting the reports. The United States also argues that Stamps has not proven his allergic reactions and other alleged injuries were caused by the mold found in USP-Pollock.

In a memo, Warden Martinez notified all staff that Aspergillus, Penicillium, and Chaetomium molds were discovered in the Visiting Room, the C-Unit Team, and the warden's Conference Room (Doc. 27-5). The Warden's memo also stated that the primary effects of those molds are allergic symptoms such as runny nose, watery eyes, and sneezing (Doc. 27-5). The affected areas were remediated in October 2011 (Docs. 27-7, 27-8).

The response to Stamps's administrative tort claim noted that Stamps had been assigned to the A-Unit in USP-Pollock, where no mold issues was found (Doc. 27-9). It was further noted that, although black mold was found in the Education Department's inmate restroom and the Recreation Department's staff restroom, the amount was not categorized as being at dangerous levels (Doc. 27-9).

Moreover, one of Stamps's medical records shows he has been diagnosed with chronic idiopathic urticaria and angioedema, tested for allergens, and found sensitive to common allergens, but not to penicillin medication (Doc. 27-10). Stamps's 2010 allergen report showed he is sensitive to penicillium notatum, European house dust mites, American house dust mites, and other common allergens (but no food allergies) (Doc. 27-10). Stamps was considered to have not been exposed to the molds found in USP-Pollock because he spent limited time where in areas where it was found (Doc. 27-10). Stamps' urticaria and angioedema were believed to be caused by stress and his genetics, and were treated with an oral anti-inflammatory and antihistamine medications, including prednisone and benadryl injections (Doc. 27-10).

Stamps has not shown that he had sufficient exposure to the mold at USP-Pollock to cause an allergic reaction. Stamps also has not shown that his urticaria and angioedema were caused by mold. On the other hand, the Government has shown that Stamps's urticaria and angioedema were caused by his allergies to dust mites and other common allergens, stress, and his genetics.

The Government shows, through a November 2, 2011 forensic investigation report by EnviroCare, that water damage in the ceiling around the supply vent in "C

Unit Team Upper," and water damage on the ceilings in the staff restroom of the Recreation Department area and the Inmate Restroom in the Education Department, were probably responsible for the mold. EnviroCare did not find any mold in the HVAC Units and their associated mechanical rooms (Doc. 27-8,). Therefore, there is no evidence that the HVAC units were "inadequate" or that the mold was spread by the HVAC Units.

Since there is no evidence to support Stamps's claim that the mold found in limited areas of USP-Pollock caused him to have allergic reactions, there are no genuine issues of material fact that preclude a summary judgment in favor of the United States on Stamps's claim that Defendant's employees negligently exposed him to toxic mold.

Medical Care Claims

Stamps also contends he was given inadequate and inappropriate medical care for his angioedema and urticaria, and that he was denied medical care for a torn muscle in 2011. The United States argues that Stamps failed to exhaust his administrative remedies as to his medical care claims, except for his claim that he was inappropriately given amoxicillin.

As a jurisdictional prerequisite to bringing a lawsuit under the Federal Tort Claims Act, a plaintiff is required to "first present his claim to the appropriate Federal agency." 28 U.S.C. 2675(a). The FTCA bars claimants from bringing suit in federal court until they have exhausted their administrative remedies. McNeil v. U.S., 508 U.S. 106, 113 (1993) ("Because petitioner failed to heed that clear statutory

command, the District Court properly dismissed his suit"). Since Stamps did not exhaust his administrative remedy as to his claims of denial of medical care for a torn muscle in 2011, improper medical treatment with steroids, and improper cosmetic surgery (Docs. 1-Ex., 5-Ex., 27-9), the Court does not have jurisdiction to consider those claims.

Stamps contends the medical staff at USP-Pollock erred by giving him Amoxicillin despite his allergy to penicillin notatum. However, Stamps's medical records indicate that he is not allergic to penicillin medication,[4] and there is no evidence that Stamps suffered an allergic reaction to the Amoxicillin.

Since there are no genuine issues of material fact that preclude a summary judgment, the United States's motion for summary judgment should be granted as to Stamps's claims that he was denied medical care.

## Conclusion

Based on the foregoing, IT IS RECOMMENDED that the United States' Motion for Summary Judgment (Doc. 27) be GRANTED and that Stamps's action be DENIED AND DISMISSED WITH PREJUDICE.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 2(b), parties aggrieved by this recommendation have **fourteen (14)** days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A

---

[4] Although the first penicillin was derived from penicillin notatum mold, penicillum is now synthesized. See Encyclopaedia Briannica, "Penicillin," *available at* https://www.britannica.com/science/penicillin#ref33693. Amoxiciililn is a semi-synthetic penicillin. See National Center for Biotechnology Information, H.H. Handsfield, H. Clark, J.F. wsallace, K.K. Holmes, M. Turck, "Amocxicillin, a New Peniciillin Antibiotic" (1973), *available at* http://www.ncbi.nlm.nih.gov/pmc/articles/PMC444397/ (a service of the U.S. National Library of Medicine and the National Institutes of Health).

party may respond to another party's objections within **fourteen (14)** days after being served with a copy thereof. No other briefs (such as supplemental objections, reply briefs etc.) may be filed. Providing a courtesy copy of the objection to the magistrate judge is neither required nor encouraged. Timely objections will be considered by the district judge before he makes a final ruling.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See <u>Douglass v. United Services Automobile Association</u>, 79 F.3d 1415 (5th Cir. 1996).

THUS DONE AND SIGNED in chambers in Alexandria, Louisiana on this 16th day of August 2016.

Joseph H.L. Perez-Montes
United States Magistrate Judge